UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                 Ancillary Case No.: 23-51748
                                 Criminal Case No.: 23-20022
v.                              U.S. DISTRICT COURT JUDGE
                                  GERSHWIN A. DRAIN

MOHAMED KAZKAZ,

          Defendant,

v.

 PRASAD LEGAL, PLLC, *et al.*,

          Petitioners.

_____/

## OPINION AND ORDER DENYING PETITIONERS PRASAD LEGAL, PLLC AND MOVE YOUR FEET, LLC'S MOTION FOR SUMMARY JUDGMENT [#18]

### I.    INTRODUCTION

Presently before the Court is Petitioners Prasad Legal, PLLC ("Prasad Legal")

and Move Your Feet, LLC's ("Move Your Feet") Motion for Summary Judgment,

filed on June 13, 2024. Petitioners claim they have a legal interest in property that

has been ordered forfeited to the United States because they are bona fide purchasers

for value pursuant to 21 U.S.C. § 853(n)(6)(B). The property at issue consists of $125,000 paid by Defendant Mohamed Kazkaz to Prasad Legal for legal representation in the underlying criminal matter. Prasad Legal claims an interest in $95,000 and Move Your Feet claims an interest in $30,000.

The Government filed a Response to Petitioners' Motion for Summary Judgment on July 18, 2024, and Petitioners filed a Reply on August 7, 2024. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Petitioners' Motion for Summary Judgment on the pleadings. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Petitioners' Motion for Summary Judgment is DENIED.

## II.   **BACKGROUND**

On January 11, 2023, Mr. Kazkaz was charged in an indictment with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count One); one count of conspiracy to pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 (Count Two); two counts of payment of kickbacks and bribes in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) (Counts Three and Four); and two counts of engaging in monetary transactions exceeding $10,000 in criminally derived property, in violation

of 18 U.S.C. § 1957 (Counts Five and Six). Dkt. No. 1.[1]

This indictment also contained extensive forfeiture allegations. It stated that "[a]s a result of the violations alleged in Counts 1 through 4," Mr. Kazkaz "shall forfeit to the United States, pursuant to [18 U.S.C. § 982(a)(7)], any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s)." *Id.* at PageID.16. The indictment further provided that "[a]s a result of the violations alleged in Counts 5 and 6," Mr. Kazkaz "shall forfeit to the United States, pursuant to [18 U.S.C. § 982(a)(1)[,] any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of [Mr. Kazkaz's 18 U.S.C. §§ 1349 and 371], and [42 U.S.C. § 1320a-7b] offenses; and any property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1957], or any property traceable to such property." *Id.* It also contained a substitute assets provision, stating that the Government would "seek to forfeit any other property of Defendant(s), up to the value of the forfeitable property described" in the Indictment if that property could not be obtained. *Id.* at PageID.16-17.

_____

[1] This case requires the Court to reference two separate dockets: the docket of this ancillary proceeding (Case No. 23-51748) and the docket of the underlying criminal action (Case No. 23-20022). For ease of reference, citations using the identifier "ECF No." refer to documents and evidence from the docket of the present ancillary proceeding. Citations using the identifier "Dkt. No." refer to documents and evidence from the docket of the underlying criminal action.

On January 17, 2023, Anjali Prasad, the sole owner of Prasad Legal, was contacted by Mr. Kazkaz's daughter, who advised Ms. Prasad that Mr. Kazkaz had been arrested. ECF No. 18-2, PageID.82. Ms. Prasad met with Mr. Kazkaz for the first time in lock-up and represented him at his January 18, 2023 arraignment. *Id.* She received and reviewed his indictment for the first time at his arraignment. *Id.*

On January 20, 2023, Mr. Kazkaz signed an "Engagement Agreement" with Prasad Legal. *Id.* at PageID.87. This agreement provided that Mr. Kazkaz would pay Prasad Legal "a flat engagement fee of $125,000 for a non-trial resolution in this matter." *Id.* It also stated that this fee was non-refundable and "earned upon receipt," and that "[r]epresentation will begin upon receipt of the above-referenced legal fees." *Id.* Mr. Kazkaz provided Ms. Prasad with a cashier's check in the amount of $125,000 on that same day, which Ms. Prasad deposited into Prasad Legal's general operating account. *Id.* at PageID.82, 88. On January 24, 2023, Prasad Legal engaged Move Your Feet, owned by Brian Kischnick, for assistance with Mr. Kazkaz's case, paying it a $30,000 flat fee via check in exchange for "legal representation and litigation support." *Id.* at PageID.83; ECF No. 18-3, PageID.96. Mr. Kischnick deposited the check into Move Your Feet's general operating business account that same day. *Id.* at PageID.97.

On March 15, 2023, the Government filed a First Superseding Indictment, charging Mr. Kazkaz with four additional counts of engaging in monetary

4

transactions exceeding $10,000 in criminally derived property, in violation of 18 U.S.C. § 1957 (Counts Seven through Ten). Dkt. No. 24, PageID.75-77. This Superseding Indictment specifically listed several items of property ("Subject Property") as "property having been derived from a specified unlawful activity, specifically a conspiracy to commit health care wire fraud [and] conspiracy to commit health care kickbacks." *Id.* at PageID.76-77. It also stated that "[t]he grand jury expressly [found] that there is probable cause that a nexus exists between the conduct alleged in Counts 1-4 and the funds referenced in Counts 5-10 in the indictment." *Id.* at PageID.78.

On March 16, 2023, the Government filed an *Ex Parte* Application for Post-Indictment Restraining Order, seeking a protective order requiring that "any person or entity who has an interest or control over the Subject Property be required to deliver it to the United States Marshals Service—to be restrained and held in the Seized Asset Deposit Fund—until further order of the Court." Dkt. No. 26, PageID.95. The Court granted this application on March 30, 2023, and the Court's Post-Indictment Restraining Order specifically listed the Subject Property as property to be delivered to the United States Marshals Service. Dkt. No. 28.

On March 30, 2023, the Government sent Ms. Prasad an email stating that it believed approximately $125,000 of the Subject Property listed "was deposited into Ms. Prasad's IOLTA account," and that "[t]hese funds must be surrendered to the

United States Marshal at once." ECF No. 21-9, PageID.222. Ms. Prasad remitted $35,000 to the United States Marshals Service, which she claims was "the amount which she believed might be remaining from the original Kazkaz legal fee." ECF No. 18-2, PageID.82. The Government sent Ms. Prasad another email on April 3, 2023, requesting the remainder of the $125,000 and stating that if she failed to remit this balance, it would file a motion compelling her to do so and finding her in contempt of court. *Id.* at PageID.94. Ms. Prasad paid the remaining balance over several installments, remitting a total of $95,000—the amount Prasad Legal received from Mr. Kazkaz less the $30,000 it paid to Move Your Feet—to the United States Marshals Service by the end of June 2023. ECF No. 18-2, PageID.86. On April 11, 2023, the Government requested that Move Your Feet remit the $30,000 it received from Prasad Legal to the United States Marshals Service, which it did on April 20, 2023. ECF No. 18-3, PageID.97, 100.

On July 18, 2023, Mr. Kazkaz entered into a Rule 11 plea agreement, pleading guilty to Counts 1 and 9 of the Second Superseding Indictment. Dkt. No. 113, PageID.1068. The plea agreement also provided that the funds remitted by Petitioners to the United States Marshals Service were "property that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the scheme underlying Count 1, or property involved in Count 9." *Id.* at PageID.1084. The Court entered a Preliminary Order of Forfeiture on October 26, 2023, which lists the funds

remitted by Petitioners to the United States Marshals Service as property that Mr. Kazkaz agreed to forfeit to the United States. Dkt No. 133.

On December 26, 2023, Petitioner Prasad Legal filed a petition pursuant to 21 U.S.C. § 853 to adjudicate its interest in the $95,000 it remitted to the United States Marshals Service. ECF No. 8. That same day, Petitioner Move Your Feet filed a petition to adjudicate its interest in the $30,000 it remitted to the United States Marshals Service. ECF No. 9. A hearing on these petitions has not yet been held. Petitioners jointly filed the present Motion for Summary Judgment on June 13, 2024. The Government filed a Response on July 16, 2024, and Petitioners filed a Reply on August 7, 2024. ECF Nos. 20, 23.

### III. LEGAL STANDARD

#### a. Summary Judgment

Federal Rule of Criminal Procedure 32.2 permits parties to an ancillary criminal forfeiture proceeding to move for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Crim. Pr. 32(c)(1)(B). Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pr. 56(a). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). A genuine dispute of material fact, also referred to as a question of fact, exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Id.* at 255.

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A movant that is subject to a preponderance of the evidence burden must present enough evidence "to allow a reasonable juror to conclude that the [movant's] position *more likely than not* is true." *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1073 (6th Cir. 1993) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)) (emphasis in original). A movant "does not meet this burden when . . . the record is in 'equipoise' or 'evenly balanced' on an essential element's existence," as is the case when the record before the court is silent with respect to an essential element. *See Pineda*, 977 F.3d at 491 (citations omitted).

### b.  Criminal Forfeiture Under 21 U.S.C. § 853

Under 21 U.S.C. § 853(c), "[a]ll right, title, and interest in property [subject to forfeiture under this section] vests in the United States upon the commission of the act giving rise to forfeiture[.]" 21 U.S.C. § 853(c). Following a conviction or guilty plea, "the court must determine what property is subject to forfeiture under the applicable statute" and "promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property." Fed. R. Crim. Pr. 32.2(b). The preliminary order of forfeiture is entered "without regard to any third party's interest in the property," and the determination of "whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Fed. R. Crim. Pr. 32.2(b)(2)(A).

After a court issues a preliminary order of forfeiture, a third party asserting an interest in forfeitable property can petition the court for a hearing to adjudicate the validity of that interest. 21 U.S.C. § 853(n)(2). A petitioner can demonstrate a valid interest in such property only if one of the following conditions applies:

A. [T]he petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the

defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

B. [T]he petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6). The petitioner bears the burden of proof in this ancillary proceeding and must establish that one of these two conditions applies by a preponderance of the evidence. *Id.*; *United States v. Coffman*, 612 Fed. App'x 278, 284 (6th Cir. 2015) (citing *United States v. Salti*, 579 F.3d 656, 661 (6th Cir. 2009)). If the petitioner meets this burden, the Court must amend the forfeiture order to exempt the third party interest. 21 U.S.C. § 853(n)(6). If the petitioner cannot meet this burden, then the ancillary proceeding concludes, and the Court shall enter a final order of forfeiture. Fed. R. Crim. Pr. 32.2(c)(2).

## IV.   <u>ANALYSIS</u>

Petitioners raise two arguments in their Motion for Summary Judgment. First, they assert that the Government lacked the authority to seize the funds at issue. Second, they claim they have a legal interest in these funds because they are bona fide purchasers for value under 21 U.S.C. § 853(n)(6)(B). These arguments will be discussed in turn.

10

## A. Government's Authority to Seize Property

Petitioners claim the Government lacked the authority to seize the funds at issue for two reasons. First, they argue that pursuant to *Luis v. United States*, 578 U.S. 5 (2016), the Government cannot seize untainted assets that a defendant intends on using for attorney's fees because doing so amounts to a Sixth Amendment right to counsel violation. Second, Petitioners assert that *United States v. Monsanto*, 491 U.S. 600, 615 (1989), prohibits the Government from seizing assets from third parties prior to the defendant's conviction.

Petitioners lack statutory standing to raise these challenges. As the Sixth Circuit has recognized, "§ 853(n) allows a third party to obtain relief on *only two grounds*: first, that its interest in forfeitable property 'was superior' to the defendant's interest in the property 'at the time of the commission of the acts giving rise to the forfeiture'; or second, that the third party was a 'bona fide purchaser for value[.]'" *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014) (emphasis added). By its plain terms, therefore, "[s]ection 853(n) does not give a third party the right to challenge the legality of the seizure; the plain language of the subsection indicates that its purpose is to ensure that the property is not taken from someone with a right to the property that is superior to the defendant." *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008). Accordingly, Petitioners cannot

11

challenge the Government's authority to seize the funds at issue in the present proceeding.

### B. Bona Fide Purchasers for Value

Next, Petitioners claim that they have a legal interest in the funds at issue because they are "bona fide purchaser[s] for value of the right, title, or interest in the property and [were] at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B). For the reasons that follow, the Court finds that questions of fact exist with respect to (1) whether Petitioners were reasonably without cause to believe the funds were subject to forfeiture, and (2) whether Petitioners provided value in exchange for the funds. Thus, the Court cannot conclude as a matter of law that Petitioners were bona fide purchasers for value under 21 U.S.C. § 853(n)(6)(B).

### i. Whether Petitioners Were Reasonably Without Cause

Petitioners claim they were reasonably without cause to believe the funds at issue were subject to forfeiture. They emphasize that Mr. Kazkaz's initial indictment did not specifically list the attorney's fee paid by Mr. Kazkaz as subject to forfeiture. Accordingly, Prasad Legal asserts it "had no actual knowledge of the source of the funds of [its] fees nor could [it] deduce they were from illegal conduct." ECF No. 18, PageID.75-76. Move Your Feet claims it "is even further removed from the transaction[]" because it was a third party vendor to Prasad Legal. *Id.* at PageID.76.

12

Thus, it "had no first-hand knowledge of the source of the funds Kazkaz paid Prasad," nor did it "have first-hand knowledge of the source of funds paid to [it] by Prasad." *Id.*

Whether Petitioners were reasonably without cause to believe the funds at issue were subject to forfeiture does not turn on whether they had *actual* knowledge of their forfeitability. *United States v. Coffman*, 612 Fed. App'x 278, 287 (6th Cir. 2015). Instead, 21 U.S.C. § 853(n)(6)(B)'s plain text makes clear that this requirement examines whether a petitioner *reasonably* believed that the property at issue was not subject to forfeiture. *Id.* Accordingly, compliance with this requirement is measured from an objective, rather than a subjective, perspective. *See id.*

The Supreme Court has recognized that an attorney's review of her client's indictment is enough to put her on notice that her attorney's fee may derive from sources that are subject to forfeiture. *Caplin & Drysdale v. United States*, 491 U.S. 617, 633 n.10 (1989) ("[G]iven the requirement that any assets which the Government wishes to have forfeited must be specified in the indictment, the only way a lawyer could be a beneficiary of § 853(n)(6)(B) would be to fail to read the indictment of his client."); *see also United States v. Monsanto*, 491 U.S. 600, 604 n.3 (1989) ("[I]t is highly doubtful that one who defends a client in a criminal case that results in forfeiture could prove that he was without cause to believe that the

property was subject to forfeiture."). Furthermore, several courts have recognized that an attorney has a duty to inquire into the source of her fee when she has reason to believe it may derive from sources that are subject to forfeiture. *See, e.g.*, *FTC v. Assail, Inc.*, 410 F.3d 256, 265 (5th Cir. 2005) ("Based on [§ 853's] statutory language, it stands to reason that if an attorney has been paid with [tainted] funds . . . and wishes to retain them, he must demonstrate that he conducted an inquiry sufficient to allow him to be 'reasonably without cause to believe that the property was subject to forfeiture.'").

Beginning first with Petitioner Prasad Legal, it is undisputed that Ms. Prasad received and reviewed Mr. Kazkaz's initial indictment on January 18, 2023, two days before Mr. Kazkaz signed Prasad Legal's engagement agreement and paid its attorney's fee on January 20, 2023. While the indictment did not specifically list the attorney's fee as subject to forfeiture, it made clear that *any* property traceable to the alleged offenses was subject to forfeiture. This indictment also charged Mr. Kazkaz with, among other things, conspiring to defraud Medicare "in an amount in excess of $4.3 million," as well as engaging in monetary transactions involving $125,000 in criminally derived property. Dkt. No. 1, PageID.9, 14-15. The breadth of the forfeiture allegations, coupled with the significant amount of money Mr. Kazkaz was alleged to have fraudulently obtained and used, would have alerted a reasonable attorney in Ms. Prasad's position of the possibility that the attorney's fee derived

from sources that are subject to forfeiture. Thus, Ms. Prasad had a duty to inquire into the source of the fee. The record before the Court is silent with respect to whether Ms. Prasad conducted this inquiry. Accordingly, the Court finds that a question of fact exists regarding whether Prasad Legal was reasonably without cause to believe the attorney's fee paid by Mr. Kazkaz was subject to forfeiture.

Turning next to Petitioner Move Your Feet, it is not apparent from the record before the Court whether Mr. Kischnick reviewed Mr. Kazkaz's indictment or otherwise had reason to believe the fee it received from Prasad Legal was subject to forfeiture. It is also unclear whether Move Your Feet conducted an inquiry into the source of this fee. As such, the Court finds that questions of fact exist with respect to whether Move Your Feet was reasonably without cause to believe the $30,000 it received from Prasad Legal was subject to forfeiture.

### ii.  Whether Petitioners Provided Value

Next, Petitioners claim they provided value in exchange for the funds at issue. Petitioners' argumentation focuses almost exclusively on Prasad Legal, claiming it provided value for the entire $125,000 attorney's fee it received from Mr. Kazkaz because this fee was "non-refundable" and "earned upon receipt." ECF No. 18-2, PageID.87. In contrast, the Government argues that although the engagement agreement between Prasad Legal and Mr. Kazkaz labeled this fee as non-refundable, the value Prasad Legal provided is limited to the work that it actually completed.

15

To determine whether Prasad Legal provided value in exchange for the entire attorney's fee, it is useful to assess whether Prasad Legal *earned* the entire fee pursuant to Michigan ethics guidelines.[2] While the Michigan Rules of Professional Conduct ("MPRC") do not squarely address when an attorney earns her fees, the State Bar of Michigan Standing Committee on Professional and Judicial Ethics ("the Committee") has issued opinions that are instructive.[3] The Committee distinguishes between two kinds of attorney's fees: non-refundable retainers and flat fees for future services. A non-refundable retainer is "earned at the time of payment." Mich. Prof'l & Judicial Ethics Comm., OP RI-69 (1991). The Committee has stated that the written engagement agreement memorializing this fee should, among other things, "unambiguously indicate[] that the lump sum purchases something in addition to a fixed amount of lawyer hours." Mich. Prof'l & Judicial Ethics Comm., OP RI-10 (1989). This suggests that a non-refundable retainer compensates a lawyer

---

[2] Eastern District of Michigan Local Rule 83.20(j) states that attorneys that practice in this Court are "subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court." E.D. Mich. L.R. 83.20(j).

[3] The Michigan Supreme Court Rules Concerning the State Bar of Michigan establish a Board of Commissioners that appoints a standing committee regarding professional and judicial ethics. S.B.R. 5, § 1(b)(2)(J). This Committee issues opinions interpreting the Michigan Rules of Professional Conduct. *Kearns v. Chrysler Corp.*, 771 F. Supp. 190, 194 (E.D. Mich. 1991). While these opinions are not binding on this Court, they provide useful guidance. *See Axle of Dearborn, Inc. v. Detroit IT*, No. 21-cv-10163, 2023 WL 5955180, at *5 (E.D. Mich. Sept. 13, 2023).

for something beyond just the lawyer's representation of a client in a particular matter. In contrast, a flat fee for future services is "unearned [at the time of receipt] and must be placed in a client trust account until the lawyer has performed the services to which the client is entitled." Mich. Prof'l & Judicial Ethics Comm., OP RI-69 (1991). The Comment to MPRC 1.5 explains that a lawyer "is obliged to return any unearned portion" of this fee upon completion of the representation. MPRC 1.5.

Indeed, the Committee's treatment of flat fees for future services accords with *United States v. McCorkle*, 321 F.3d 1292 (11th Cir. 2003), a case the Government relies on in support of its position. There, the Eleventh Circuit stated that when an attorney claims she is a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B), "the only assets that are potentially immunized from forfeiture are those for which *value has been given.*" *Id.* at 1295 n.4 (emphasis in original). Accordingly, "[a] criminal defendant cannot pay an attorney for rendition of future legal services with the expectation that the entire payment will be immune from forfeiture. Rather, the court would have to pro rate the value of services that have been rendered by the attorney, immunizing from forfeiture those fees earned while meeting the [bona fide purchaser] test." *Id.*

Here, the engagement agreement between Prasad Legal and Mr. Kazkaz states that the attorney's fee was a "non-refundable flat fee that is earned upon receipt,"

17

which suggests that the parties intended for the fee to be a non-refundable retainer. However, the record before the Court does not establish whether, as required for nonrefundable retainers, the attorney's fee compensated Prasad Legal for anything beyond its representation of the Mr. Kazkaz in his criminal case. Therefore, the Court finds that a question of fact exists regarding whether the attorney's fee was a nonrefundable retainer that Prasad Legal earned upon receipt.

As for Petitioner Move Your Feet, the record before the Court is silent in several important respects, including the terms of the contractual relationship between Prasad Legal and Move Your Feet, as well as the scope and extent of Move Your Feet's representation of Mr. Kazkaz. Accordingly, the Court finds that questions of fact exist with respect to whether Move Your Feet provided value in exchange for the $30,000 it received from Prasad Legal.

In conclusion, the Court finds that questions of fact exist with respect to (1) whether Petitioners were reasonably without cause to believe the funds at issue were subject to forfeiture, and (2) whether Petitioners provided value in exchange for the funds. As such, the Court cannot conclude as a matter of law that Petitioners were bona fide purchasers for value under 21 U.S.C. § 853(n)(6)(B).

## V.   <u>CONCLUSION</u>

Based on the foregoing, Petitioners' Motion for Summary Judgment is DENIED.

18

SO ORDERED.

Dated: December 13, 2024

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 13, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager

19